## THE BENJAMIN A. VAN BRUNT.

### THE ALICIA B. CROSBY.

(District Court, E. D. Virginia. February 13, 1909.)

COLLISION (§ 34°)—SCHOONERS MEETING—CHANGE OF COURSE.

 A collision at night off the New Jersey coast between two schooners, one laden and on a northeasterly course and the other light on a southwesterly course, held, on conflicting evidence, to have been solely due to the fault of the latter in not keeping out of the way and in changing her course across that of the other very shortly before the collision.

 [Ed. Note.—For other cases, see Collision, Cent. Dig. § 32; Dec. Dig. § 34.°]

In Admiralty. Suit for collision.

Hughes & Little, for the Van Brunt.

Floyd Hughes, for the Crosby.

WADDILL, District Judge. This libel was filed to recover damages sustained by the Van Brunt in a collision with the schooner Alicia B. Crosby, to which the latter answered and filed a cross-libel against the Van Brunt, seeking to recover for damage sustained by her in the same collision. On the night of the 3d of May, 1907, about 11 o'clock, or shortly thereafter, the Van Brunt and the Crosby came into collision in the Atlantic Ocean, off the Jersey coast, between Cape May and Atlantic City, at a point about three miles northeast of Northeast End Lightship, on Five-Fathom Bank. The Van Brunt was a four-masted schooner, 185 feet long, 42 feet beam, gross tonnage, 1,800, net 1,133, loaded with railroad ties, en route from Savannah to New York; and the Crosby was a four-masted schooner, 204 feet long, 42 feet beam, 1,803 tons gross, 1,103 net, en route light from Portland, Me., to Newport News, Va.

The Van Brunt's contention is that while on the starboard tack, on a course northeast, with all sails set except her top and stay sail, with the wind to the eastward, properly manned and equipped, two men being on the lookout, and her lights properly set and brightly burning, the red light of the Crosby was reported about two points off of the Van Brunt's port bow, the Crosby being about a mile to a mile and a half away; that in a short time the Crosby showed both her side lights, and then shut out her red light, and showed only her green light, while she was still on the Van Brunt's port bow; that the Van Brunt, being on the starboard tack, held her course until the collision was inevitable, when her wheel was put rapidly to port, in order to relieve the blow of the collision, which immediately followed, the bow of the Van Brunt striking the Crosby on the starboard side just aft of the forerigging, the result of which was both vessels were seriously damaged.

The Crosby, on the other hand, contends that on the night in question, when about six miles east-northeast of Northeast End Lightship, with the wind blowing moderately from the southeast, while on the port tack, on a course south-southwest, with all sails set, being proper-

ly manned and equipped, and her lights properly set and brightly burning, some six or seven minutes before the collision which afterwards occurred, her lookout reported a green light about two points on the Crosby's starboard bow, the vessels then being, as stated in the cross-libel, about a mile and a half apart, though in the testimony of the master of the Crosby he places the vessels, at the time of sighting the green light of the Van Brunt, at about five or six miles; that the master of the Crosby observed said light, and, judging it was on a vessel from the south and on a course apparently not converging with his own, continued his own course without apprehending danger; that the vessels continued to approach each other, when suddenly the other vessel, which afterwards proved to be the Van Brunt, about two minutes before the collision, changed her course, opening up her red light, and showed both lights, and then, shutting out her green light, showed only her red light on the starboard bow of the Crosby, making the collision inevitable; that in this condition the Crosby's master put his helm hard up, and his vessel had probably fallen off a point, when the two vessels came together, the Van Brunt striking the Crosby about ten feet forward of the main rigging, cutting into her starboard side and decks about five feet, causing serious injury.

These statements of the parties' contentions, respectively, show that the vessels were practically on a parallel course, each proceeding in opposite directions, and, while it was in effect admitted that the Van Brunt was the vessel having the right of way, it was conceded by both sides that the case turned entirely upon which vessel actually made the change of course which brought about the collision, as there could have been no coming together of the two vessels, had they maintained their respective courses. The correct solution of the issue thus presented necessarily depends upon the version of which vessel's crew the court will accept, as each strongly supports the contention of its respective ship; and there is little difficulty in arriving at the same, in view of the fact that the evidence very strongly preponderates in favor of the Van Brunt. The Van Brunt, at the time of the collision, had two seamen on the lookout, each of whom testified to reporting the red light of the Crosby at about a mile and a half off the port bow of their vessel, of the subsequent movements of the two vessels up to and about the time of the collision, and of the sudden change of course of the Crosby across the Van Brunt's bow, and the bringing about of the collision as contended for by the Van Brunt. The master of the Van Brunt and her wheelsman also strongly corroborate the testimony of the lookouts; and all four concur in the fact that the Van Brunt, at the time of the collision, was being navigated as contended for by her, and that her lights were properly set and brightly burning. Against this we have the testimony of the master of the Crosby and his wheelsman, who alone, until the moment of the collision, with the seaman whom it was claimed was acting as lookout, were on deck and engaged in the act of navigating the ship. The lookout was not examined, though in the employ of the Crosby for some five months after the collision, when it is alleged he disappeared. The master of the Crosby testifies strongly in favor of the contention on the part of his

vessel, as hereinbefore stated, and is supported by his wheelsman; but their account the court should not accept as against that of the navigators of the Van Brunt, including the two seamen on the lookout, especially in view of the fact that the navigators of the Crosby admit that only the master and one seaman were on deck, the latter acting as lookout, and that the lookout was twice within a period of two hours, the first time about 9 o'clock, and then at about half past 10, taken off watch to assist in hauling sails, each time being absent from 10 to 12 minutes, and the last one being made about half an hour before the collision. During these periods, at least, the Crosby was without a lookout, and this may go far to account for the collision, which may have occurred during the last absence of the lookout from his post.

There was some controversy as to the direction of the wind at the time of the collision; the Van Brunt's contention being that at that time it was blowing from east by south, and the Crosby's from southeast. While in the judgment of the court this question does not materially enter into the happening of this accident, still the testimony, including that from the lightships in the vicinity, tends to support the Van Brunt's statement, as against that of the Crosby.

The conclusion reached by the court upon the whole case is that the collision resulted solely because of the fault of the Crosby's navigators in failing to keep out of the way and changing her course across that of the Van Brunt at a time when it was too late for the latter to avoid the consequences of such change; and a decree may therefore be entered so ascertaining.